IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02607-PAB-KLM

MOHAMMED SALEH,

    Applicant,

v.

BLAKE DAVIS, Warden of USP-Max, Florence,[1]

    Respondent.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [Docket No. 3; Filed November 5, 2009] filed *pro se* by Mohammed Saleh ("Applicant"). Respondent filed an Answer Brief ("Answer Brief") objecting to the Application on December 30, 2009 [Docket No. 12]. Applicant filed a reply on January 14, 2010 [Docket No. 13] (hereinafter "Traverse"). On September 23, 2010, Applicant also filed a pleading tilted "Affidavit in Support of 2241" [Docket No. 15]. As leave was not requested or given to file any supplemental pleadings, the Court does not consider it. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Application has been referred to this Court for recommendation. The matter has been fully briefed and is ripe for resolution. For the reasons set forth below, the Court recommends that the Application be **DENIED**.

---

[1] The Application originally sued Ron Wiley, the former warden of the super maximum federal prison in Florence, Colorado ("ADX"). The current warden of ADX, Blake Davis, is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

## I. Statement of the Case

Applicant is a federal prisoner incarcerated at ADX, the country's only super maximum federal prison facility. *Application* [#3] at 1. Pursuant to his Application, Applicant challenges a prison disciplinary proceeding which resulted in the deprivation of good-time credits. *Application* [#3] at 2. The events giving rise the disciplinary conviction occurred at the United States Penitentiary in Florence, Colorado (USP-Florence), which is located within the same prison complex as ADX, and where Applicant was assigned while awaiting transfer from ADX. As a consequence of the events, Applicant was returned to ADX. Applicant seeks to have his disciplinary conviction overturned and his good-time credits reinstated. *Id.* at 5.[2] Specifically, Applicant raises three grounds for relief.

Claim I — Prison officials violated Applicant's due process rights during the prison disciplinary proceedings. *Id.* at 3.

Claims II — Prison officials violated Applicant's constitutional right of self defense. *Id.* at 3-4.

Claim III — Prison officials committed procedural errors and violated Applicant's right against double jeopardy. *Id.* at 4.

As to the merits of Applicant's first claim, Respondent contends that Applicant was

---

[2] To the extent that Applicant also seeks expungement of his record, admission to the ADX Step-Down Unit Program and transfer to a different prison facility, the Court makes two observations. First, only those remedies that impact the duration of an inmate's sentence are cognizable in habeas cases. *See generally Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). As such, the Court has no authority to order Applicant's record expunged. Second, Applicant's admission to the Step-Down Unit Program and his transfer to a different facility do not impact the length of his sentence and, in fact, are circumstances at issue in another civil action pending in this District, Case No. 05-cv-02547-PAB-KLM. As such, these requests will not be considered herein.

not denied due process. *Answer Brief* [#12] at 8-12.  Specifically, Respondent argues that Applicant:  (1) was provided with sufficient written notice of the charges brought against him prior to any hearings he received; (2) he was provided an opportunity to present witnesses and documents in his defense; (3) he received written reports from the Disciplinary Hearing Officer ("DHO"); and (4) the DHO's written findings were based on ample evidence in the record.  *Id.*  In relation to Applicant's second claim, Respondent argues that a prisoner has no constitutional right of self defense.  *Id.* at 13-14.  In relation to Applicant's third claim, Respondent argues that no procedural rules were violated, but that even if there were, such violations do not raise constitutional implications, *id.* at 12-13, and that a rehearing on a prison disciplinary charge that has been remanded by the Bureau of Prison's ("BOP") Regional Director does not constitute double jeopardy.  *Id.* at 14-15.

The facts giving rise to Applicant's claims are as follows.  On September 25, 2008, Applicant was seen striking another inmate in the face with closed fists.  *Answer Brief* [#12] at 3.  The USP-Florence officer who witnessed Applicant's conduct prepared an incident report, which was delivered to Applicant on September 26, 2008.  *Id.*; *Incident Report* [#12-1] at 11.  A hearing was held in front of the Unit Disciplinary Committee ("UDC") on October 7, 2008, and the UDC referred the charge of "fighting with another person" to the DHO.  *DHO Report* [#12-1] at 19.  The UDC informed Applicant of his rights at the conclusion of the initial hearing, including that he had a right to call witnesses and present evidence, but Applicant refused to sign the form indicating that he had been informed of these rights [Docket No. 12-1 at 14-15].  Also on this date, Applicant was advised that a hearing would be held sometime after October 8, 2010, but he again refused to acknowledge that he had been so informed [Docket No. 12-1 at 17].  Applicant had a hearing in front of the DHO on

November 5, 2008.  *DHO Report* [#12-1] at 19.  He requested and received staff representation in advance of the hearing.  *Id.*  Through his representative, he submitted a two-page letter to the DHO.  *Id.* at 20.  The representative also attempted to obtain statements from Applicant's inmate witnesses in advance of the hearing, but each of his five (5) witnesses, including one who is a co-plaintiff with Applicant in Case No. 05-cv-02457-PAB-KLM, refused to provide any comment.  *Id.*  At the hearing, the DHO read Applicant the incident report and asked if the facts contained therein were true.  *Id.*  Applicant "replied, I deny.  It was self defense."  *Id.*  At the conclusion of the November 5, 2008 hearing, the DHO found Applicant guilty of the charge of fighting.  *Id.* at 21-23.  Applicant was sanctioned with, among other things, the loss of twenty-seven days (27) days of good-time credit.  *Id.* at 23.  Applicant received the DHO's report on November 6, 2008.  *Id.* at 24.

Applicant appealed his disciplinary conviction, alleging that he did not receive a UDC hearing within the time frame required, the UDC hearing was flawed, the UDC did not provide a copy of its decision, the DHO did not call Applicant's inmate witnesses, and there was evidence that Applicant's conduct was committed in self defense.  *Regional Appeal* [#12-1] at 26.  The BOP's Regional Director appeared to reject Applicant's specific challenges, but remanded the charge with instructions to amend the incident report to correct a procedural error.  *Id.*  Specifically, the Regional Director noted that the report should be rewritten "to include the actions of both inmates and any injuries they may have incurred."  *Regional Director Memo* [#12-1] at 28.

In response, an amended incident report was prepared on January 13, 2009 and delivered to Applicant.  *Amended Incident Report* [#12-1] at 30.  The amended incident

report indicated that Applicant was seen striking another inmate with closed fists, and that the other inmate was also seen striking Applicant with closed fists. *Id.* Upon delivery of the amended incident report, Applicant acknowledged that he understood his rights. *Id.* at 31. Applicant again met with the UDC, and it again referred the charge of fighting to the DHO based on the allegations contained in the amended incident report. *Second DHO Report* [#12-1] at 38. Applicant's second DHO hearing was held on January 27, 2009. *Id.* Applicant again received staff representation. *Id.* The representative attempted to interview Applicant's witnesses and again they refused to comment. *Id.* at 39. The representative submitted a one-page letter written by Applicant to the UDC and a two-page letter written by Applicant to the DHO. *Id.* At the hearing, the DHO read the amended incident report to Applicant and when asked if the facts contained therein were true, Applicant "replied, I deny. It was self defense. Why didn't the incident report say anything about the weapon?" *Id.* In making his determination, the DHO also considered fourteen memoranda submitted by USP-Florence officials, three injury assessment reports, and eight pages of photographs, among other evidence.

At the conclusion of the January 27, 2009 hearing, the DHO found Applicant guilty of the charge of fighting, primarily due to the witness statements written by USP-Florence officials indicating that they saw Applicant striking another inmate with closed fists. *Id.* at 40-41. One of the statements indicated that Applicant "picked up a chair and threw it at [the] inmate . . . ." *Id.* at 41. Although these statements indicated that the other inmate was also striking and/or chasing Applicant, the DHO noted that according to the weight of evidence, Applicant was also an active participant in the fight. *Id.* at 43. The DHO imposed the same sanctions as had been previously imposed, including the loss of twenty-seven

(27) days of good-time credit, but reduced the loss of phone time from one-hundred eighty (180) days to ninety (90) days.

## II. Standard of Review

Applicant is challenging a disciplinary sanction he received impacting the length of his federal sentence pursuant to 28 U.S.C. § 2241. *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Because Applicant is proceeding *pro se*, the Court must construe his Application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects caused by Applicant's *pro se* status. *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993). However, the Court is not the Applicant's advocate and must nevertheless deny an application that is based on vague or conclusory allegations. *Hall*, 935 F.2d at 1110.

## III. Analysis

### A. Due Process

Respondent claims that Applicant received due process during all stages of his disciplinary proceedings. *Answer Brief* [#12] at 10-12. By contrast, Applicant argues that the procedures utilized prior to and during his second DHO hearing did not provide due process. Specifically, Applicant contends that (1) that he did not receive a UDC hearing within the time frame required; (2) the UDC never provided a copy of its decision; (3) the DHO did not call Applicant's inmate witnesses; (4) Applicant's transfer from USP-Florence to ADX hindered his ability to prepare a defense; and (5) the DHO refused to consider exculpatory evidence. *Application* [#3] at 3; *Traverse* [#13] at 7-8.

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguard afforded by the Due Process Clause of the Fourteenth Amendment.'" *Howard v. BOP*, 487 F.3d 808, 811 (10th Cir. 2007) (citations omitted).  However, the process that is due a prisoner in this context is limited and must only satisfy three constitutional criteria:  (1) advance written notice of the disciplinary charges must be provided; (2) the opportunity to call witnesses and present evidence, when such would not be inconsistent with the prison's safety goals, must be afforded; and (3) a written opinion by the DHO of the evidence relied upon to impose a disciplinary sanction must be provided to the inmate.  *Id.* at 812.

As a preliminary matter, to the extent that Applicant argues that the timing of his UDC hearing and the failure of the UDC to provide him with a written order violate prison policy and constitute a deprivation of his due process rights, "[t]he mere fact that a prison violates its own rules does not create a due process violation." *Wojtkiewicz v. Gunter*, 978 F.2d 1268 (table) (10th Cir. 1992) (citing *United States v. Caceres*, 440 U.S. 741 (1979)).  Accordingly, the Court summarily rejects these contentions.[3]  As to Applicant's remaining contentions, he "bears the burden of showing that a right secured by the federal constitution was taken from him, [which is] a greater burden than showing a violation by a prison of its own rules."  *Id.*

---

[3] In any event, the Court notes that neither policy at issue here was violated.  First, in relation to the nearly two-week delay between the incident and the UDC hearing, 28 C.F.R. § 541.15(b) recommends, but does not require, that the UDC hearing be held within three days of the date of the incident.  Second, in relation to the UDC's failure to provide Applicant with a written opinion of its decision to refer Applicant to the DHO, 28 C.F.R. § 541.15(h) does not require the submission of a written decision.  In fact, on its face, section 541.15(h) appears to explicitly prohibit the preparation of such a decision.

### 1.     Witness Testimony and the Ability to Present a Defense

First, Applicant argues that he was denied due process because he was not allowed to present exculpatory evidence in the form of witness testimony at either hearing. *Application* [#3] at 3; *Traverse* [#13] at 8.  Applicant's contention that he was not allowed to have witnesses testify on his behalf is contradicted by the record.  First, both DHO Reports indicate that Applicant was provided an opportunity to speak on his behalf, and he did so when he informed the DHO that his conduct was committed in self defense.  *DHO Report* [#12-1] at 20; *Second DHO Report* [#12-1] at 39.  Applicant was also permitted to submit written statements.  *DHO Report* [#12-1] at 20; *Second DHO Report* [#12-1] at 39.

Second, the DHO noted that Applicant received staff assistance in advance of each hearing.  *DHO Report* [#12-1] at 19; *Second DHO Report* [#12-1] at 38.  Both times, the representative attempted to interview Applicant's witnesses and none who were available would comment.  *DHO Report* [#12-1] at 20; *Second DHO Report* [#12-1] at 39.  Further, in relation to the rehearing, I note that Applicant's staff representative attempted to contact one of Applicant's witnesses, but he was unavailable. *Second DHO Report* [#12-1] at 42.  The representative informed Applicant of the witness' unavailability and asked Applicant whether he wanted to continue pursuing this witness' testimony, and Applicant said that he did not.  *Id.*  Applicant was given an opportunity to refute the representative's account on the record, but there is no indication that he did so.  *See id.*

Considering the above, Applicant's claim that he was not afforded the right to call witnesses is not credible, and the Court rejects it.  Further, although Applicant appears to disagree, I find that his witnesses' refusal to comment is not the factual equivalent of a refusal to allow Applicant's witnesses to testify.  In advance of both hearings, Applicant's

staff representative attempted to get the witnesses' statements and none would cooperate. Nothing in the law compels witness testimony in these circumstances, or invalidates proceedings conducted without it. Even assuming that the DHO refused to allow the witnesses to testify, the record does not indicate what these witnesses would have testified to, other than "no comment." *See id.* at 39, 42. For example, nowhere in the Application does Applicant indicate what the testimony would have been, nor arguably could he because the witnesses refused to comment when given the opportunity to provide their observations to Applicant's staff representative. Accordingly, on this record, there is no evidence that these individuals' failure to testify impacted Applicant. *See Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993) (noting that where inmate cannot show that lack of witnesses impacted the outcome, due process not implicated).

Second, despite the fact that Applicant contends that his transfer to ADX after the fight and the location of his witnesses in other places interfered with his ability to present a defense, see, e.g., *Traverse* [#13] at 8, there is no support for such a contention. As noted above, all of the witnesses who were available were interviewed, and Applicant waived his right to follow up with those who were not available. The witnesses who were available all refused to comment. From this history, there is no evidence that Applicant's location impacted his ability to present a defense. Further, the record reflects that at both hearings, Applicant presented a defense. The record also reflects that the DHO considered Applicant's statements, oral and written, and his staff representative's statements, in addition to the other documentary and testimonial evidence available. Although Applicant is dissatisfied with the outcomes of both hearings, his claim that he was unable to present a defense is not credible, and the Court rejects it.

Considering the above, neither Applicant's inability to call specific witnesses nor his location at a different facility implicates any due process concerns.

### 2.    Evidence of Guilt

Applicant claims that there was insufficient evidence to convict him of fighting. *Application* [#3] at 3; *Traverse* [#13] at 8.  More specifically, he contends that the DHO failed to consider exculpatory evidence, including a videotape of the incident and a witness statement submitted by a prison official which allegedly contradicted the amended incident report. *Application* [#3] at 3.  As a preliminary matter, to the extent that Applicant contends that the DHO failed to consider A.I. Gallardo's witness statement, this contention is summarily rejected.  The DHO did consider the witness statement of Mr. Gallardo.  Specifically, the DHO noted that while Mr. Gallardo indicated that Applicant was being chased by another inmate who appeared to instigate the fight, Applicant threw a chair at the inmate.  *See Second DHO Report* [#12-1] at 41.

To be upheld, a disciplinary conviction must be supported by "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).  This is not an overly stringent standard.  "Ascertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Howard*, 487 F.3d at 812 (quoting *Hill*, 472 U.S. at 455-56).  "The decision can be upheld even if the evidence supporting the decision is 'meager.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) (quoting *Hill*, 472 U.S. at 457).

Here, regardless of any alleged exculpatory evidence or the DHO's alleged failure

to view a videotape of the incident, I find that Applicant's disciplinary conviction was supported by sufficient evidence. The DHO considered the amended incident report, which was prepared by the officer who witnessed Applicant hitting another inmate in the head and upper torso with closed fists. The DHO also considered several eye witness statements, including the statement of one officer who saw Applicant throw a chair at the inmate. Based on a review of the evidence, including Applicant's written and oral statements, the DHO found that Applicant was guilty of fighting with another inmate. Specifically, the DHO found that although there was evidence that the other inmate was also striking and/or chasing Applicant, the DHO noted that Applicant's

> incident report reflects what you are being charged with and your actions during the incident in question. Your argument of self defense does not apply based on the eye witness account that you were seen striking [the] inmate . . . . If you were in a self defense position, you would have been blocking him not striking him. The eye witness clearly saw you striking [the] inmate . . . with your closed fists as he was striking you with closed fists as well.

*Id.* at 43. The DHO also noted that the other inmate was charged both with possession of a weapon and fighting and "[a]lthough you disagree with the contents of the incident report because you state that you were defending yourself, the Bureau of Prisons does not accept self defense as a reason for fighting back. The end result was that you retaliated against this inmate by hitting back." *Id.* Further, the DHO found that "[b]ased on the evidence and information presented during this hearing, it is the belief of this DHO that you did have a physical altercation in which you were an active participant thus constituting a fight." *Id.* I agree.

Considering the above, the DHO's findings are based on more than meager evidence. There is at least "some evidence" in the amended incident report and Second

DHO Report for a reasonable officer to conclude that Applicant committed the charge of fighting. As such, the DHO's decision is supported by sufficient evidence and does not implicate any due process concerns.

### B. Self Defense

Applicant contends that the DHO's refusal to credit Applicant's defense violates his alleged constitutional guarantee to defend himself. *Application* [#3] at 3-4; *Traverse* [#13] at 9. However, there is no constitutional right to claim self defense in a prison disciplinary proceeding. *See Rowe v. DeBruyn*, 17 F.3d 1047, 1052-53 (7th Cir. 1994). Although the Tenth Circuit does not appear to have explicitly addressed this issue, the Seventh Circuit has noted that a DHO is "under no constitutional obligation to allow [an inmate's] claim of self defense to serve as a complete defense to the charge of fighting." *Riggs v. Hanks*, 2 Fed. Appx. 525, 575 (7th Cir. 2001); *see also Scruggs v. Jordan*, 485 F.3d 934, 938-39 (7th Cir. 2007) (noting that inmates do not have a right of self defense to excuse fighting in prison context). Furthermore, crediting such a defense "may simply beget more prison violence." *Martin v. Tilton*, No. 07-cv-01022, 2008 WL 474393, at *6 (S.D. Cal. Feb. 15, 2008) (unpublished decision).

Moreover, although the DHO noted that self defense would not excuse Applicant's actions, he also specifically found that Applicant was not engaged in self defense. I agree with this characterization of Plaintiff's conduct. To the extent that Applicant's "argument is simply another way to challenge the disciplinary committee's determination that [he] committed the prohibited acts," I have already found "that a reasonable [officer] would conclude that 'some evidence' supports that decision." *Brown v. Wyo. DOC State Penitentiary*, 234 Fed. Appx. 874, 880 (10th Cir. May 23, 2007). Accordingly, Applicant's

claim raises no cognizable constitutional injury.

### C.     Double Jeopardy

Applicant contends that in response to the Regional Director's decision, it was error for Respondent to amend the incident report and conduct a rehearing. *Application* [#3] at 4; *Traverse* [#13] at 9. Instead, he alleges that his record should have been expunged.[4] As a preliminary matter, to the extent that Applicant's double jeopardy argument is based on an allegation that Respondent did not act as ordered by the Regional Director, the argument is rejected. Applicant's argument is contradicted by review of the Regional Director's decision and his memorandum to officials about how to interpret that decision. In the memorandum, the Regional Director specifically tasked the prison officials involved with amending the incident report and conducting a rehearing. *Regional Director Memo* [#12-1] at 28. They were never directed to find Applicant innocent of the charge of fighting or to expunge the incident report.

Further, it has long been recognized that "[p]rison disciplinary hearings are not part of a criminal prosecution and therefore do not implicate double jeopardy concerns." *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994). Even if double jeopardy principles applied to prison disciplinary proceedings, amending an incident report and conducting a rehearing do not place an inmate in double jeopardy. *See, e.g.*, *Brown v. Pharmchem Labs., Inc.*, 2 F.3d 1160 (table) (10th Cir. Aug. 10, 1993) (holding that double jeopardy does not apply

---

[4] As noted above, to the extent that Applicant also alleges that his placement at ADX violates his constitutional rights, this allegation is at issue in Case No. 05-cv-02467-PAB-KLM and will not be adjudicated herein. Further, to the extent that Applicant contends that his placement at ADX hindered his ability to present a defense, this allegation was addressed in analysis of Applicant's first claim.

even when inmate initially found not guilty, then later convicted based on amended incident report); see also 28 C.F.R. § 541.19 (noting that DHO may be directed to conduct rehearing following appeal of prison disciplinary conviction). Accordingly, Applicant's claim raises no cognizable constitutional injury.

## IV. Conclusion

In reviewing the merits of Applicant's claims, the Court finds that Applicant is not entitled to relief under 28 U.S.C. § 2241. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court **RECOMMENDS** that the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED** and that the case be **dismissed with prejudice**.

IT IS FURTHER **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have fourteen (14) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Res. Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. United States v. One Parcel of Real Prop., 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: November 4, 2010

BY THE COURT:

/s/ Kristen L. Mix
United States Magistrate Judge
Kristen L. Mix